UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA HERNANDEZ,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | NO. CV 08-1848 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

　　　Christina Hernandez filed this action on March 20, 2008. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on April 3 and September 30, 2008. (Dkt. Nos. 8, 10.) The Commissioner filed the certified administrative record. (Dkt. No. 14.) On December 4, 2008, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

　　　Having reviewed the entire file, the Commissioner's decision is affirmed.

///
///
///

# I.

## PROCEDURAL BACKGROUND

On August 2 and 10, 2004, Hernandez filed applications for disability insurance benefits and supplemental security income benefits. A.R. 20. The applications were denied initially and upon reconsideration. A.R. 26-29. An Administrative Law Judge ("ALJ") conducted a hearing on February 20, 2007, at which Hernandez, a medical expert, and a vocational expert testified. A.R. 429-456. On March 22, 2007, the ALJ issued a decision denying benefits. A.R. 17-24. Hernandez requested review. A.R. 15. On November 23, 2007, the Appeals Council denied Hernandez's request for review. A.R. 9-12.

This lawsuit followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

///
///

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

## B. The ALJ's Findings

The ALJ found that Hernandez has the following severe impairments: "degenerative disc disease of the lumbosacral spine, status-post cervical spine fusion surgery, status-post cerebrovascular accident and history of alcohol abuse." A.R. 23. Hernandez has the residual functional capacity ("RFC") "to perform the full range of sedentary exertion." *Id.* The ALJ found that Hernandez could perform her past relevant work as a receptionist. A.R. 23-24.

## C. ALJ's Assessment of Hernandez's Credibility

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

### 1. Step One of the Credibility Analysis

At Step One, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.' 'Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no

showing that the impairment can reasonably produce the *degree* of symptom alleged.'" *Id.* (citations omitted); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).  The ALJ did not make an express finding at Step One, but his decision implicitly assumes that Hernandez does have a medically determined impairment which could be expected to produce some pain.  A.R. 22.

### 2.  Step Two of the Credibility Analysis

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted).  "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

The ALJ made no finding of malingering.  "[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief."  *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citations and quotation marks omitted).  "The ALJ must cite the reasons why the claimant's testimony is unpersuasive."  *Id.* (citation and quotation marks omitted).

In weighing credibility, the ALJ may consider factors including:  the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation."  *Bunnell*, 947 F.2d at 346 (en banc) (citing Social Security Ruling

///

///

4

("SSR") 88-13,[1] internal quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in claimant's statements; (b) inconsistencies between claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

"If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.* at 959; *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ found that Hernandez's allegations about the extent and intensity of her pain were not entirely credible for the following reasons: (1) conservative treatment for pain; (2) objective medical findings were inconsistent with her allegations of disabling pain; (3) failure to seek medical treatment; (4) vague statements about alcohol use; (5) lack of motivation to work; and (6) inconsistency between her allegations and her daily activities. A.R. 21-23.

### *Conservative Treatment*

The ALJ noted that while under the care of Dr. Smith, Hernandez received only "conservative treatment." A.R. 21.

Hernandez alleges an onset date of July 27, 2004. *Id.* After drinking several margaritas at a party, she fell down the stairs. A.R. 268. The diagnoses at discharge were syncopal episode, cerebrovascular accident, degenerative spine disease, degenerative disc disease in the cervical and lumbar spines, history of cervical spine fusion surgery, and ethyl alcohol abuse.[2] A.R. 267. She was "discharged home on muscle relaxant, pain management." A.R. 266-267.

---

[1] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

[2] Her alcohol level was 0.22. A.R. 269.

5

Hernandez was seen again by her treating physician, Dr. Smith, on September 20, 2004. A.R. 383. He noted "a lot of neck and back pain with limited flexion and extension secondary to pain."[3] *Id.* He recommended a CT scan of the lumbar spine and EMG nerve conduction studies, after which he would decide if "she is a surgical candidate." *Id.*

On November 16, 2004, Hernandez saw Dr. Reed for EMG nerve conduction studies. A.R. 374. The studies were "within normal limits and do not electrodiagnostically indicate any evidence of peripheral neuropathy." A.R. 376. Needle EMG studies of the bilateral lower extremities were also within normal limits. A.R. 377. A report was faxed to Dr. Smith. *Id.*

On December 13, 2004, Hernandez had a follow-up visit with Dr. Smith. A.R. 382. He found that her EMG and CAT scan did not show "any significant radiculopathy." *Id.* He found that she had "an abnormal pars consistent with a healing spondylolysis of many years duration." *Id.* He found this to be "her main pain generator." *Id.* He recommended "epidural injections at the L4-5 level." *Id.*

Hernandez did not follow up with Dr. Smith. The next medical records are dated February 8, February 24, and April 12, 2005 from an osteopath named Biazzo. A.R. 399-401. Dr. Biazzo continued Hernandez on pain medication, diagnosed a urinary tract infection and recommended follow-up with a doctor after Hernandez moved to California. A.R. 399-400.

The recommendations of the doctors after her July 2004 fall included physical therapy, drugs, and epidural injections, all of which are conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (ALJ may discount claimant's testimony based on conservative treatment), *cert. denied*, 128 S. Ct. 1068 (2008); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)

---

[3] Despite Hernandez's report of extreme pain to Dr. Smith in September 2004, the only pain medication she was taking in November of 2004 was Tylenol P.M. A.R. 375.

("The record reflects that Tommasetti responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication . . .. Such a response to conservative treatment undermines Tommasetti's reports regarding the disabling nature of his pain."); *Contreras v. Astrue*, 2009 WL 196153, *6 (N.D. Cal. 2009) (periodic cortisone injections constitute conservative treatment).

Accordingly, substantial evidence supports the credibility finding based on conservative treatment.

### *Objective Medical Findings*

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ found that the objective medical findings were inconsistent with Hernandez's allegations of disabling pain. A.R. 21. The medical expert opined that, around April 2, 2002 when she had cervical surgery, Hernandez met a listing, but the listing would not have been met for a full year. A.R. 434. Subsequent to her alleged onset date, Hernandez developed problems with her lumbar spine, a possible stroke, and a bulging disk as described in the treating physician's records. A.R. 433, 436-437; *see* A.R. 266. No recommendations were made for surgical intervention with respect to the lumbar spine. A.R. 433. The ALJ is entitled to rely on the treating physicians' medical records and the opinion of the medical expert. Accordingly, substantial evidence supports the ALJ's finding.

### *Failure to Seek Medical Treatment*

The ALJ found it reasonable to assume that a claimant experiencing extreme pain in the range of 9-10 on a scale of 1 to 10 "would have sought some treatment to help alleviate her pain." A.R. 22.

///

At the hearing on February 20, 2007, Hernandez testified that she does not have health insurance. A.R. 446. However, she testified that she has still has access to medical care (lifetime medical) under her prior workers' compensation case. A.R. 444. She testified that she is now attempting to access it, but has encountered "some red tape." A.R. 444-445. Therefore, Hernandez argues that the ALJ may not rely on the absence of ongoing medical treatment.

An unexplained, or inadequately explained, failure to seek treatment may support an adverse credibility finding. *See Orn*, 495 F.3d at 638. However, failure to seek medical treatment cannot support an adverse credibility finding when it is due to lack of funds or medical coverage. *Id.*

Here, Hernandez testified that she has lifetime medical under her workers compensation case. A.R. 444. After the hearing, Hernandez submitted a medical record indicating she saw a physician on December 6, 2006 at Antelope Valley Neuroscience. A.R. 414-419. At the hearing, Hernandez testified that the workers compensation carrier told her that the doctor must send in the paperwork and reopen the case. A.R. 452. There is a gap in the medical records between Hernandez's last visit to an osteopath on April 12, 2005 (A.R. 399) until December 6, 2006, just before the hearing. That gap is not explained by lack of medical coverage or red tape.[4] The ALJ could properly rely on this reason.

///

---

[4] Hernandez's contention that Dr. Smith's request to a workers' compensation insurance carrier for authorization to conduct tests on January 28, 2005 was "still pending" as of the date of the hearing is unsupported. JS at 6. A form entitled "Employee Work Status" dated January 28, 2005, indicates "patient pending authorization for tests and attending physical therapy." A.R. 420. However, Dr. Smith ordered a CT scan of the lumbar spine as well as EMG nerve conduction studies on September 20, 2004. A.R. 383. Those tests were performed and the results reviewed by Dr. Smith during Hernandez's last visit on December 13, 2004. A.R. 382. Dr. Smith does not indicate any additional tests to be done. *Id.* The Employee Work Status document was handed to the ALJ at the hearing and does not identify the "tests." As noted above, Hernandez subsequently moved to California. The page of the hearing transcript Hernandez cites (A.R. 445) does not reference that alleged request for authorization or its disposition.

***Vague Statements About Alcohol Use***

The ALJ found that Hernandez was "vague regarding her alcohol use; initially stating that she used it on a regular basis [citing A.R. 268 from July 27, 2004] and later reporting that she occasionally used alcohol [citing A.R. 375 from November 16, 2004; and A.R. 114 from February 12, 2007 ]." A.R. 22-23.

Hernandez argues that the statements cited by the ALJ are from different times and are not inconsistent because her drinking habits may have changed. JS at 8. The ALJ, however, said only that her statements were "vague." In her statement dated February 2007, Hernandez states that she drinks "some alcohol sometimes for pain & stress." A.R. 114. This statement may be interpreted as inconsistent with Hernandez's allegations that she experiences pain of 9-10 every day. A.R. 445.

An ALJ may properly rely on inconsistent statements about alcohol use. *Thomas*, 278 F.3d at 959; *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). This rationale has been applied when a claimant's statements about substance abuse are directly contradictory. In *Thomas*, the claimant "admitted to alcoholism and to smoking 'a little pot'" in November 1992 yet, in June 1993, denied any history of substance abuse. *Thomas*, 278 F.3d at 959. Similarly, in *Robbins v. SSA*, 466 F.3d 880, 888-89 (9th Cir. 2006), the claimant denied on April 4, 1989, having a drinking problem, "[y]et during that same period . . . [t]he claimant has been drinking up to a case a day."

Giving Hernandez the benefit of the doubt, her vague statements about alcohol abuse are not a valid basis for discounting her credibility.

***Lack of Motivation to Work***

The ALJ found that Hernandez "does not seem too motivated to work; she reported in July 2004, that she was receiving Workers' Compensation benefits." A.R. 23. A poor work history "negatively affect[s] [a claimant's] credibility regarding her inability to work." *Thomas*, 278 F.3d at 959. Receiving workers

9

compensation benefits, however, is not without more evidence of a poor work history. Accordingly, this reason is not supported by substantial evidence.

### *Daily Activities*

The ALJ found that Hernandez's "daily activities are also inconsistent with her allegations." *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1196-97 (9th Cir. 2004). The ALJ stated that Hernandez reported "she was living with friends, she drove her car and she socialized with her friends." A.R. 23. Hernandez testified that she lives a little bit with her son, her friends, and "I stay here and there." A.R. 450. In a questionnaire dated February 12, 2007, Hernandez wrote, in response to social contacts, "[j]ust with people that I leave here and there with." A.R. 108. In response to the subcategory "Other (drive car, ride bus, etc.)," Hernandez wrote, "[s]ometimes mostly I have . . . people take me here & there." *Id.* These notes are too cryptic to support an inference that her daily activities are inconsistent with her subjective allegations. Accordingly, the evidence regarding Hernandez's daily activities does not constitute substantial evidence to support an adverse credibility finding.

### *Summary*

In *Carmickle v. Comm'r of the Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008), the Ninth Circuit concluded that two of the ALJ's reasons for making an adverse credibility finding were invalid. The court held that when an ALJ provides specific reasons for discounting the claimant's credibility, the question is whether the ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning *and ultimate credibility determination*." *Id.* at 1162 (italics in original). Therefore, when, as here, an ALJ articulates specific reasons for discounting a claimant's credibility, reliance on an illegitimate reason(s) among others does not automatically result in a remand. *See Batson*, 359 F.3d at 1197 ("in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence

on which the ALJ relied, there was substantial evidence supporting the ALJ's decision").

In light of the ALJ's three valid reasons for discounting Hernandez's credibility and the record as a whole, substantial evidence supported the ALJ's credibility finding.  "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959; *Morgan v. Commissioner of the Social Security Administration*, 169 F.3d 595, 600 (9th Cir. 1999).

## IV.
## ORDER

IT IS HEREBY ORDERED that the Commissioner's decision is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: April 16, 2009

_____
ALICIA G. ROSENBERG
United States Magistrate Judge